■ EDWARD L. REINHART et al., Plaintiffs, and THEODORE SCHREINER et al., Respondents, v LONG ISLAND LIGHTING Co., INC., et al., Appellants. — Judgment of the Supreme Court, New York County (Alvin Klein, J.), entered on May 20, 1983, which, *inter alia,* following the jury trial, awarded plaintiff Theodore Schreiner the sum of $1,000,000, plus costs, disbursements and interest for a total of $1,038,261.70 and awarded plaintiff Ethel Schreiner the sum of $100,000, plus interest, for a total of $103,725, is affirmed, with costs and disbursements. ¶ The evidence at the trial held in connection with this matter established that plaintiff Theodore Schreiner sustained many severe and permanently disabling injuries as a result of the accident which occurred on May 15, 1980 when the scaffold upon which he was standing collapsed. Since this court had previously granted summary judgment to plaintiffs on the question of liability, the only issue before the jury involved the amount of the damages to be recovered. (*Reinhart v Long Is. Light. Co.,* 91 AD2d 571.) In that regard, it was amply demonstrated, and the dissent does not disagree, that plaintiff was seriously hurt and suffered a series of painful and complex injuries, including multiple spinal and rib fractures and dislocations, a fractured pelvis, contused left kidney, and a collapsed lung. During the approximately 40-day period of his hospitalization, he was in constant pain and underwent, among other surgical procedures, a bilateral spinal fusion. ¶ In fact, the primary, if not sole, dispute in the instant case concerns the course of plaintiff's convalescence and the extent of his recovery. The defendants tend to minimize the lasting effect of plaintiff's injuries, and the dissent appears to accept this position. According to our dissenting brethren, the healing process, except for one area of contention, was excellent, and some eight months after the accident, plaintiff had ceased using a brace and the attending physician had indicated that he could return to work on a limited basis. In the one area of contention noted by the dissent, they refer to the testimony of Dr. Louis Katz, a defense witness who examined plaintiff at the request of Dr. Richard S. Goodman, an orthopedist who was called by plaintiff. The dissent seems to perceive significance in plaintiff's failure to call Dr. Katz himself and finds Dr. Katz' assertion that plaintiff's spinal fusion was healing well more persuasive than Dr. Goodman's conclusion that X rays revealed the onset of a separation at the site of the spinal fracture. ¶ It is, however, the function of the jury, not this court, to assess the weight of the evidence and the credibility of the witnesses. (*Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.,* 46 NY2d 528.) Based upon the proof elicited at trial, the jury could reasonably choose to believe Dr. Goodman's description of plaintiff's medical condition and reject the evaluation made by Dr. Katz. Certainly, it is not the responsibility of this court to substitute its judgment concerning the severity of plaintiff's spinal injury for that of the jury, which had the opportunity to hear the testimony first hand, observe the demeanor of the witnesses and review conflicting versions of the facts. The evidence at trial herein was sufficient to support plaintiff's allegation that as a result of the accident, he is totally and permanently disabled from employment, that he has been, and continues to be, afflicted with constant pain and that his mobility has been greatly impaired. In view of the plaintiff's persistent disability, suffering and economic loss, the

jury's verdict was not so excessive as to shock the conscience of the court. (See *Neal v Rainbow House Fruits,* 87 AD2d 511.) Concur — Ross, J. P., Milonas and Alexander, JJ.

Carro and Bloom, JJ., dissent in a memorandum by Bloom, J., as follows: Plaintiff, Theodore Schreiner, a 58-year-old plumber, was employed by a subcontractor in connection with construction work performed for Long Island Lighting Co., Inc., at the Shoreham facility. While he was standing on a scaffold, the guardrail gave way and he plummeted some 15 or 20 feet to the floor below, suffering substantial injury. He brought action to recover for his injuries. We granted summary judgment on the issue of liability (*Reinhart v Long Is. Light. Co.,* 91 AD2d 571). Thereafter, the matter went to trial on the issue of damages. The jury found in favor of plaintiff in the sum of $1,000,000 and in favor of his wife Ethel for $100,000 on her cause of action for loss of services. We are of the opinion that both verdicts are grossly excessive. Accordingly, we would reduce the verdict in favor of Theodore Schreiner to the sum of $500,000 and the verdict in favor of his wife, Ethel to $50,000. ¶ Plaintiff suffered a spinal fracture which was surgically repaired by bone graft and fusion, fractures to nine of the ribs of his left side, and a fracture of the transverse process of the pelvis. He also suffered a contusion of the kidney, and during the surgical repair of the spine, his lung collapsed. ¶ Without in any way denigrating the seriousness of the injuries suffered it is important to note that there is no dispute but that the healing was, except with respect to one area of contention, most excellent. On May 15, 1980, the date of the accident, plaintiff was taken to Mather Memorial Hospital. He remained there until June 22, 1980, a total of 38 days. After a period of rest and recuperation at home he was able to move about with the use of a brace. Some eight months after the accident he had ceased using the brace and shortly thereafter the physician who had attended him, both at the hospital and during his convalescence, indicated that he saw no reason why he should not be able to go back to work on a limited basis. ¶ On October 31, 1981, Dr. Goodman, an orthopedic specialist, saw Mr. Schreiner for the first time. Dr. Goodman testified that the injuries to Mr. Schreiner's ribs, pelvis, lungs and kidney had all completely healed prior to Schreiner's first visit. Apparently, there was no complaint of back pain at that time other than that attendant upon congenital spinal abnormalities and arthritis which had long pre-existed the accident. Schreiner indicated that he was able to sleep comfortably and to lift light objects. For three months thereafter Schreiner visited Dr. Goodman once monthly. After the three-month period the visits occurred on a bimonthly basis. Sometime in September, 1982, Dr. Goodman concluded as a result of examination of X rays taken on September 13, 1982 that there was a possibility that separation of the fusion had begun at the site of the spinal fracture. To obtain a more accurate picture of the injury a tomogram, a more sophisticated type of X ray, was taken on October 18, 1982 by Dr. Katz at the request of Dr. Goodman. Dr. Katz was not called as a witness by the plaintiff. However, he was subpoenaed by the defendants and testified that the tomogram demonstrated a completely united bone graft at the site of the spinal fracture and that there was no indication of nonunion. He described the fusion at the fracture site as mature and was of the opinion that no pseudoarthritis would occur absent some wholly new and independent trauma. He also read the X rays taken on September 13, 1982 and concluded that they confirmed the results of the tomogram. It is worthy of comment that not until Dr. Goodman informed Schreiner that the X rays of September 13 indicated the possibility of a separation of the spinal fusion did Schreiner again commence the use of the brace, something which he continued to the date of trial. ¶ In these circumstances, we think that the spinal injury has been substantially overstated. By consequence, we are of the opinion that the verdicts are grossly excessive. We would reduce accordingly.